J-S09007-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
BRUCE SWINTON :
:
Appellant : No. 299 EDA 2020

Appeal from the Judgment of Sentence Entered January 6, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000695-2019

BEFORE:  OLSON, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                **FILED SEPTEMBER 16, 2021**

Appellant, Bruce Swinton, appeals from the judgment of sentence entered on January 6, 2020.  We affirm.

Appellant was arrested and charged with possession of a firearm by a prohibited person, firearms not to be carried without a license, and carrying a firearm on the public streets of Philadelphia.[1]  Prior to trial, Appellant filed a suppression motion and (among other things) argued that all of the evidence against him must be suppressed because, "before searching [Appellant's] . . . person[, the] police lacked probable cause to search" him.  Appellant's Suppression Motion, 5/20/19, at 2.

---

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), and 6108, respectively.

On August 6, 2019, the trial court held a hearing on Appellant's motion.

As the trial court ably explained, the following evidence was produced at the

hearing:

> Philadelphia Police Officer Fred MacConnell testified to the following at the evidentiary hearing on Appellant's suppression motion: On August 23, 2018, at approximately 10:10 p.m., in response to numerous complaints about the illegal sales of narcotics, the officer set up surveillance at 4901 North Fifth Street, a "high narcotics location" in Philadelphia. At the time, Officer MacConnell had been a Philadelphia Police officer for nearly fourteen years and had conducted "hundreds" of surveillance operations.
>
> The property located at 4901 North Fifth Street is a "Chinese store." Officer MacConnell testified that the police "received numerous complaints for [narcotics] sales" around and inside the store. The store is small with no tables inside for customers to sit and eat. It has large windows, which one can see through. Officer MacConnell testified, "You can see anybody in there."
>
> Shortly after he set up the surveillance, the officer observed an unknown Black male sitting on the steps at the location. At approximately 10:15 p.m., Officer MacConnell saw Appellant and another male, who was later identified as Javier Hicks, approach the male sitting on the steps. The three men engaged in a brief conversation and then walked inside the store.
>
> Officer McConnell was less than fifteen feet from Appellant and the other men inside the store. The officer saw Appellant and Mr. Hicks each hand an unknown amount of United States currency to the unidentified male. The male then "reached into his pants pocket, removed small objects, and handed them" to Appellant and Mr. Hicks, both of whom exited the store.
>
> In consideration of his nearly fourteen years of experience, his observations of Appellant's conduct, and his knowledge of the area in which the hand-to-hand transaction occurred,

- 2 -

Officer MacConnell "believed a narcotics transaction had just taken place." Therefore, the officer requested backup officers to stop Appellant and Mr. Hicks.

Police Officer MacConnell further testified that Officer Henry stopped Appellant in the 500 block of West Ruscomb Street and recovered "a silver Taurus .357 revolver . . . loaded with six live rounds." Also recovered from Appellant was one clear plastic jar containing a green leafy substance, which tested positive for marijuana.

Appellant testified at the evidentiary hearing and stated he went to the store with Mr. Hicks, who bought a cigar. Appellant claimed that he did not purchase marijuana from anyone at the store because he already had marijuana in his backpack.

[The trial court] considered the testimony of the witnesses as well as the arguments of counsel and found Officer MacConnell's testimony credible. The police had probable cause to arrest Appellant. Accordingly, the court denied the suppression motion. Appellant then stipulated to incorporate the testimony from the evidentiary hearing and proceeded to a bench trial.

Trial Court Opinion, 11/16/20, at 1-3 (some capitalization omitted).

Following the bench trial, the trial court found Appellant guilty of the charged crimes. On January 6, 2020, the trial court sentenced Appellant to serve an aggregate term of three-and-one-half to seven years in prison for his convictions. Appellant filed a timely notice of appeal from his judgment of sentence. He raises the following claim to this Court:

Whether the police officer had probable cause to conduct a warrantless search of [Appellant's] person during a custodial detention that violated his Fourth Amendment rights against unreasonable searches and seizures?

A. [Appellant] was in a custodial detention and did not consent to the search.

- 3 -

B. The gun found on [Appellant's] person was not in plain view.

C. The police officer who searched [Appellant's] person was not conducting a patdown search for his safety.

D. There were no exigent circumstances to support the warrantless search.

E. There was no probable cause to support the warrantless search.

Appellant's Brief at 6.

We have reviewed the briefs of the parties, the relevant law, the certified record, the notes of testimony, and the opinion of the able trial court judge, the Honorable Roxanne E. Covington. We conclude that Appellant is not entitled to relief in this case, for the reasons expressed in Judge Covington's November 16, 2020 opinion. Therefore, we affirm on the basis of Judge Covington's thorough opinion and adopt it as our own. In any future filing with this or any other court addressing this ruling, the filing party shall attach a copy of Judge Covington's November 16, 2020 opinion.

Judgment of sentence affirmed. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 9/16/2021*

- 4 -

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA - PHILADELPHIA
TRIAL DIVISION – CRIMINAL SECTION


COMMONWEALTH OF PENNSYLVANIA    :      CP-51-CR-0000695-2019

v.                                     :

BRUCE SWINTON                  :      **299 EDA 2020**

## OPINION

Covington, J.

Bruce Swinton ("Appellant") was arrested and subsequently tried on charges of unlawfully possessing a firearm as well as possession of marijuana. After denying Appellant's suppression motion, this Court found Appellant guilty and sentenced him to an aggregate term of three and one half to seven years of incarceration. This appeal followed.

In Appellant's statement of matters complained of on appeal, he claimed the following error:

> [A]. Whether the police officer had probable cause to conduct a warrantless search of [Appellant's] person during a custodial detention that violated his Fourth Amendment rights against unreasonable searches and seizures?

Concise Statement of Matters Complained of on Appeal ("1925(b) Statement").


## I.    FACTUAL HISTORY

Philadelphia Police Officer Fred MacConnell testified to the following at the evidentiary hearing on Appellant's suppression motion: On August 23, 2018, at approximately 10:10 p.m., in response to numerous complaints about the illegal sales of narcotics, the officer set up surveillance at 4901 North Fifth Street, a "high narcotics location" in Philadelphia. (Notes of Testimony,

1

"N.T.," 8/6/2019, at 9-10). At the time, Officer MacConnell had been a Philadelphia Police officer for nearly fourteen years and had conducted "hundreds" of surveillance operations. *Id.* at 12-13.

The property located at 4901 North Fifth Street is a "Chinese store." *Id.* at 9. Officer MacConnell testified that the police "received numerous complaints for [narcotics] sales" around and inside the store. *Id.* at 10. The store is small with no tables inside for customers to sit and eat. *Id.* It has large windows, which one can see through. *Id.* at 18. Officer MacConnell testified, "You can see anybody in there." *Id.*

Shortly after he set up the surveillance, the officer observed an unknown Black male sitting on the steps at the location. *Id.* at 9. At approximately 10:15 p.m., Officer MacConnell saw Appellant and another male, who was later identified as Javier Hicks, approach the male sitting on the steps. *Id.* The three men engaged in a brief conversation and then walked inside the store. *Id.*

Officer McConnell was less than fifteen feet from Appellant and the other men inside the store. *Id.* at 12. The officer saw Appellant and Mr. Hicks each hand an unknown amount of United States currency to the unidentified male. *Id.* at 10. The male then "reached into his pants pocket, removed small objects, and handed them" to Appellant and Mr. Hicks, both of whom exited the store. *Id.*

In consideration of his nearly fourteen years of experience, his observations of Appellant's conduct, and his knowledge of the area in which the hand-to-hand transaction occurred, Officer MacConnell "believed a narcotics transaction had just taken place." *Id.* at 10-11. Therefore, the officer requested backup officers to stop Appellant and Mr. Hicks. *Id.* at 11.

Police Officer MacConnell further testified that Officer Henry stopped Appellant in the 500 block of West Ruscomb Street and recovered "a silver Taurus .357 revolver . . . loaded with

2

six live rounds." *Id.* Also recovered from Appellant was one clear plastic jar containing a green leafy substance, which tested positive for marijuana. *Id.* at 11-12.

Appellant testified at the evidentiary hearing and stated he went to the store with Mr. Hicks, who bought a cigar. *Id.* at 21. Appellant claimed that he did not purchase marijuana from anyone at the store because he already had marijuana in his backpack. *See id.*

This Court considered the testimony of the witnesses as well as the arguments of counsel and found Officer MacConnell's testimony credible. *See id.* at 32. The police had probable cause to arrest Appellant. Accordingly, the Court denied the suppression motion. *Id.* at 33. Appellant then stipulated to incorporate the testimony from the evidentiary hearing and proceeded to a bench trial. *Id.*

Philadelphia Police Officer Reuben Henry testified at Appellant's trial. After receiving information from Officer MacConnell, Officer Henry stopped Appellant in the 500 block of West Ruscomb Street. *Id.* at 44. The officer felt a hard object in Appellant's front waistband and recovered a .357 revolver from that area. *Id.* at 44-46. From Appellant's backpack, Officer Henry retrieved a container with marijuana inside. *Id.* at 45.

Before resting, the Commonwealth entered Exhibits C-2 and C-3 into evidence. *Id.* at 47. Exhibit C-2 was a ballistics report indicating that the firearm, which Officer Henry recovered from Appellant, was operable. *Id.* Exhibit C-3 was the certificate of non-licensure, indicating that Appellant did not possess a license to carry a firearm. *Id.* Lastly, there was a stipulation between the parties that Appellant had a previous conviction for possession with the intent to deliver narcotics, rendering him ineligible to possess a firearm. *Id.* at 48.

3

Juana Serrano testified as a character witness on behalf of Appellant and stated that Appellant is "very loved in the community, he's trusted to care for his children, he's big[-]hearted." *Id.* at 50.

Kristal Swanson, Appellant's stepmother, also testified as a character witness. Ms. Swanson testified that Appellant is a "[g]ood person . . . . Everybody loves him, he's very helpful, honest." *Id.* at 52.

## II.  PROCEDURAL HISTORY

On August 6, 2019, Appellant litigated a motion to suppress evidence, indicating the grounds for the motion were, "[u]nder the Pennsylvania and United States Constitution[s], . . . the police did not have probable cause to stop and arrest [Appellant]." *Id.* at 5. Following the testimony as well as the arguments of counsel, this Court denied Appellant's motion. *Id.* at 32-33. Appellant then waived his right to a jury trial and proceeded to a bench trial. *Id.* at 33-40. The Court found Appellant guilty of possession of a firearm by a prohibited person,[1] possessing a firearm without a license,[2] and carrying a firearm in public in Philadelphia.[3] *Id.* at 54.

On February 24, 2020, the Court sentenced Appellant within the guidelines to an aggregate term of three and one half to seven years of incarceration. Appellant timely filed a notice of appeal and, on January 23, 2020, filed a Concise Statement of Matters Complained of on Appeal.

---

[1] 18 Pa.C.S.A. § 6105
[2] 18 Pa.C.S.A. § 6106
[3] 18 Pa.C.S.A. § 6108

4

## III. DISCUSSION

### A. The police had probable cause to arrest Appellant.

Appellant argues that the police lacked probable cause to arrest him. 1925(b) Statement. Whether probable cause exists to justify an arrest "is determined by considering the totality of the circumstances." *Commonwealth v. Holton*, 906 A.2d 1246, 1249 (Pa. Super. Ct. 2006) (citing *Illinois v. Gates*, 462 U.S. 213 (1983)). "Under the totality of the circumstances, a police officer must make a practical common sense decision whether, given all of the circumstances known to him at that time, including hearsay information, there is a fair probability that a crime was committed and that the suspect committed the crime." *Id.* (quoting *Commonwealth v. Taylor*, 850 A.2d 684, 687 (Pa. Super. Ct. 2004)).

The Pennsylvania Superior Court has explained:

> Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. Probable cause justifying a warrantless arrest is determined by the totality of the circumstances. Probable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent men act. It is only probability and not a *prima facie* showing of criminal activity that is a standard of probable cause. To this point on the quanta of evidence necessary to establish probable cause, the United States Supreme Court recently noted that finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the probable cause decision.

*Id.* (quoting *Commonwealth v. Dommel*, 885 A.2d 998, 1002 (Pa. Super. Ct. 2005)).

The Pennsylvania Supreme Court's opinion in *Commonwealth v. Thompson*, 985 A.2d 928 (Pa. 2009), guided this Court's resolution of Appellant's case. In *Thompson*, our Supreme Court

5

applied the probable cause standard to a factual somewhat scenario similar to the one in Appellant's case. The *Thompson* Court summarized the relevant facts of its case:

> On January 21, 2005, in the evening, Philadelphia Police Officer Orlando Ortiz was on duty in the 2400 block of Leithgow Street. Officer Ortiz knew the neighborhood as a high crime area in which narcotics, and specifically heroin, regularly were sold. The area was designated by the Philadelphia Police Department as an "Operation Safe Streets" neighborhood. Officer Ortiz, a nine-year veteran of the police force, and his partner, Officer Correa, were in plainclothes and driving an unmarked vehicle. Officer Ortiz saw a car parked by the sidewalk and observed [the defendant] standing in the street by the driver's side door. Officer Ortiz watched [the defendant] hand the male driver some money and saw the driver give [the defendant] a small object in return. Based on what he saw on the street and what he knew, including the fact that he had made several hundred narcotics arrests of this very type, Officer Ortiz believed the men were engaged in a drug transaction. Officer Ortiz stopped [the defendant] and recovered from his pocket a packet of heroin. Officer Correa approached the driver and ultimately recovered two packets of heroin from his hand and an additional 14 packets from his person.

*Id.* at 930.

The Commonwealth charged the defendant in *Thompson* with possession of a controlled substance. *Id.* The defendant filed a motion to suppress the physical evidence against him, claiming that the police "lacked the probable cause necessary to support the search and seizure." *Id.* The trial court denied the motion, and the defendant was found guilty of possessing a controlled substance. After the Superior Court affirmed the defendant's judgment of sentence, the Pennsylvania Supreme Court granted allowance of appeal to determine "[w]hether the initial seizure and immediately ensuing search lacked probable cause." *Id.* at 931.

In affirming the defendant's judgment of sentence, the *Thompson* Court reiterated that a probable cause analysis demands a court consider the totality of the circumstances. *Id.* Therefore, "[t]he time is important; the street location is important; the use of a street for commercial

6

transactions is important; . . . the place where the small items were kept by one of the sellers is important; the movements and manners of the parties are important." *Id.* at 932 (citation omitted).

The *Thompson* Court held that "a police officer's experience may fairly be regarded as a relevant factor in determining probable cause." *Thompson*, 985 A.2d at 935. However, as to the factor of officer experience, the Supreme Court cautioned "that an officer's testimony in this regard shall not simply reference training and experience abstract from an explanation of their specific application to the circumstances at hand." *Id.* (quotations and citations omitted). Instead, the Court held, "the officer must demonstrate a nexus between his experience and the search, arrest, or seizure of evidence." *Id.*

In applying the law to the facts of the case before it, the *Thompson* Court held that the police had probable cause to arrest the defendant. The Court explained:

> The evidence at the suppression hearing established that Officer Ortiz was a nine-year veteran of the police force who was on undercover patrol in a high crime area that had been designated by the Philadelphia Police Department as an Operation Safe Streets neighborhood. In addition to this designation by the department, Officer Ortiz was personally familiar with heroin sales activity in the neighborhood, heroin packaging, and hand-to-hand drug exchanges on the street. In drawing a nexus between his experience and the observation he made, Officer Ortiz testified that he had seen this type of "exchange done several hundred times" on the street and had made several hundred narcotics arrests of this very type.
>
> Because we have determined that a police officer's experience may be fairly regarded as a relevant factor in determining probable cause, and due to the presence of additional factors in support of Officer Ortiz's conclusion that he was witnessing a drug transaction, we find no error in the Superior Court's conclusion that probable cause was present in this case. We do not base our decision solely on Officer Ortiz's experience and the connection he articulated between that experience and what he observed. We also rely on the fact that the transaction at issue occurred in the nighttime hours, on the street, in a neighborhood that the police department selected for the "Operation Safe Streets" program.

*Id.* at 936-937 (footnotes omitted).

7

Like the *Thompson* case, the totality of the circumstances in Appellant's case established that the police had probable cause to believe Appellant engaged in an illegal narcotics transaction. First, as required by *Thompson*, Officer MacConnell "demonstrate[d] a nexus between his experience and the search, arrest, or seizure of evidence." *Id.* at 935 (quotations and citations omitted). During the suppression hearing, Officer MacConnell testified that he was a thirteen-year veteran of the Philadelphia Police Department. (*See* N.T., 8/6/2019, at 12). He had set up "hundreds" of surveillances during his career as a police officer. *Id.* at 12-13. Officer MacConnell testified that he was personally familiar with the location—a "high narcotics area"—and had observed hundreds of similar hand-to-hand transactions. *See id.* at 10, 13. Based upon this experience, the officer believed Appellant participated in a narcotics transaction. *Id.* at 13.

Officer MacConnell, thus, drew a nexus between his experience and his observations of Appellant's conduct. The officer applied his thirteen-plus years of experience as a police officer, his knowledge of the area, and his familiarity with hand-to-hand narcotics transactions to his observation of Appellant's behavior before and after the exchange with the unknown black male inside the store. Therefore, Officer MacConnell satisfied the specific application of his experience to the circumstances which gave probable cause to arrest Appellant. *See Thompson*, 985 A.2d 928.

Furthermore, the totality of the circumstances supported a determination of probable cause. *See Holton*, 906 A.2d at 1249 ("Under the totality of the circumstances, a police officer must make a practical common sense decision whether, given all of the circumstances known to him at that time, including hearsay information, there is a fair probability that a crime was committed and that the suspect committed the crime.") (citation and quotation omitted). After they lawfully arrested him, the officers searched Appellant incident to the arrest and discovered the firearm as well as the marijuana. Therefore, the arresting officers constitutionally recovered the physical evidence.

8

*See Commonwealth v. Trenge*, 451 A.2d 701, 710 (Pa. Super. Ct. 1982) (stating that a lawful arrest authorizes a search incident to arrest).

## IV.    CONCLUSION

The Court has carefully reviewed the entire record and finds no harmful, prejudicial, or reversible error as well as nothing to justify Appellant's requested relief. Therefore, for the reasons set forth above, Appellant's judgment of sentence should be affirmed.

BY THE COURT:

Roxanne E. Covington
November 16, 2020

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing has been served upon the following:

Defense Attorney: Scott P. Sigman, Esquire
2016 Spruce Street
Philadelphia, PA 19103

Type of Service: (X) First Class Mail     ( ) Certified Mail     ( ) Personal Service

District Attorney: Lawrence Goode, Esquire
Interim Chief, Appeals Unit
City of Philadelphia Office of the District Attorney
Three South Penn Square
Philadelphia, PA 19107-3499

Type of Service: (X) Inter-Departmental Mail   ( ) Certified Mail     ( ) Personal Service

Date: November 16, 2020

Matthew Sullivan
Law Clerk to the Honorable Roxanne E. Covington

10